## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **MICHELLE R. WEDDERBURN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-24-1734** |
| **v.** | * | |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **BALTIMORE COUNTY,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Michelle Wedderburn ("Plaintiff") filed this pro se civil action against the Board of Education of Baltimore County ("Board" or "Defendant") alleging various civil rights violations, including violations of the Americans with Disabilities Act ("ADA") and violations of the Fifth and Fourteenth Amendments. This matter is before the Court on the Board's Motion to Dismiss, or in the Alternative, for Summary Judgment (the "Motion").[1] ECF No. 9. The Motion is fully

---

[1] Plaintiff also submitted a Motion for Leave to File Surreply, ECF No. 19, with a proposed surreply, ECF No. 19-1, which shall be denied. "Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies are not permitted unless so ordered by the court, pursuant to Local Rule 105.2(a), and should only be allowed when the "moving party would otherwise be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)). "A party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. No. RDB-12–2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a)). Because Plaintiff's surreply does not raise new issues and is merely a recitation of her previous arguments, her motion for leave to file surreply shall be denied.

briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff, a black woman over 40 years of age, worked for Baltimore County Public Schools ("BCPS") for over 20 years. ECF No. 1 at 3, ¶¶ 16–17 (Complaint). During the 2015–2016 school year, Plaintiff was an assistant principal. On October 9, 2015, she was severely injured when she attempted to break up an altercation between two students. *Id.* ¶ 22. She sought, and was granted, workers' compensation, until the Board sent her a letter stating that she was expected to return to full duty on March 7, 2016. *Id.* ¶¶ 23–24. Between March 2016 and June 2016, Plaintiff submitted multiple requests for reasonable accommodations, but none of her requests were granted. *Id.* ¶ 25. Instead, Plaintiff contends that she was put in the "Options" process because the Board wanted to remove her from her position for seeking accommodations.[2] *Id.* ¶ 26. Plaintiff withdrew her accommodations requests and was removed from Options. *Id.* ¶ 27. However, Plaintiff was reassigned as a kindergarten teacher for the 2016–2017 school year. *Id.* ¶ 28. Plaintiff then filed a complaint with the Maryland Commission on Civil Rights ("MCCR") in June 2016 for failure to accommodate and retaliation. *Id.* ¶ 29.

In August 2017, Plaintiff was again placed as an assistant principal. *Id.* ¶ 30. She also signed a settlement agreement with the Board resolving her previous claims. *Id.* Shortly after, Assata Peterson, an EEO Officer, emailed Plaintiff notifying her that she was prohibited from

---

[2] "The Options process allows employees who have been deemed medically unfit to perform their essential job functions to seek alternative positions, or 'options' within the school system." *Wedderburn v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. PX-19-00215, 2022 WL 504511, at *2 (D. Md. Feb. 18, 2022). "While looking for another employment 'option,' within BCPS, an employee may use her own leave to remain 'in positive employment status.'" *Id.*

wearing her personal assistive device, threatening her with discipline. *Id.* ¶ 31. In June 2018, Plaintiff filed an initial charge with the MCCR alleging disability discrimination and retaliation, and she was issued a notice of right to sue letter. *Id.* ¶ 32. In December 2018, Plaintiff again requested additional accommodations and complained that she did not receive them. *Id.* ¶ 33. Plaintiff alleges that in December 2018, she was "escorted from the building by [p]olice, placed on leave, and put in Options where her only options w[ere] termination or resignation." *Id.* ¶ 34.

In January 2019, Plaintiff filed a lawsuit in this Court, *see Wedderburn v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. PX-19-00215, 2022 WL 504511 (D. Md. Feb. 18, 2022). *Id.* ¶ 35.

Over a year later, in December 2020, Plaintiff submitted an application for leave from the unified sick leave bank ("USLB"), and Ms. Peterson acknowledged receipt of the application. *Id.* ¶ 38. As per Board policy, Plaintiff was put on sick leave as of December 2020 because she applied for disability retirement. *Id.* ¶ 39. Plaintiff alleges that at the time of her application, she met all of the Board's criteria for approval. *Id.* ¶ 40. On July 29, 2021, Plaintiff was placed in Options for a third time, without notice or justification. *Id.* ¶ 43. She alleges that her options were: apply for disability retirement, which she was already doing; apply for Family Medical Leave Act ("FMLA") leave; apply for another position within the Board; apply for reasonable accommodations; resignation; or termination. *Id.* Plaintiff sought FMLA leave but was ineligible. *Id.* ¶ 44. She then applied for leave as a reasonable accommodation. *Id.*

Plaintiff alleges that on October 1, 2021, the Board stopped paying her salary without notice. *Id.* ¶ 45. Then, on October 4, 2021, Ms. Peterson sent an email indicating that Plaintiff was ineligible for leave from the USLB because of an active workers' compensation claim from October 2015, when she was originally injured. *Id.* ¶ 46. According to Plaintiff, Ms. Peterson already knew that the workers' compensation case was not active. *Id.* ¶ 47 (citing ECF No. 1-16

(Pl. Ex. 13)). On October 11, 2021, Plaintiff was denied leave as a reasonable accommodation, though she had already been on leave since December 2020. *Id.* ¶ 48. Plaintiff alleges that similarly situated employees who had applied to the USLB under the same circumstances were approved to draw from the USLB for at least a year. *Id.* ¶ 49. Plaintiff alleges that she was never afforded the chance to prove that her workers' compensation claim was inactive. *Id.* ¶ 50.

Plaintiff alleges that in November 2021, the Board seized her vacation pay, stopped calculating the accrual of vacation hours, and billed Plaintiff $4,333.32. *Id.* ¶ 52. On December 8, 2021, Plaintiff filed another claim with the MCCR. *Id.* ¶ 53. Later that month, on December 14, Allyson Huey, a hearing officer for the Board, recommended Plaintiff's termination on the grounds of medical incompetence. *Id.* ¶ 54. Plaintiff received a letter from the Office of Benefits, Leaves & Retirement dated December 20, 2021, notifying her that her employee benefit plans would terminate at the end of the month, based on the termination of her employment "as of" December 14. *Id.* ¶ 55 (citing ECF No. 1-11 (Pl. Ex. 8)). But, before the Board acted on the recommendation for termination, Plaintiff completed a resignation form dated February 2, 2022, and was approved for disability retirement effective on either February 1, 2022, ECF No. 9-9 (Def. Ex. 8), or March 1, 2022, ECF No. 9-8 (Def. Ex. 7).

In August 2022, Plaintiff participated in a settlement conference with the Board pertaining to the prior lawsuit. ECF No. 1, ¶ 58. Plaintiff participated in arbitration in September 2022 with the goal of recovering five months of lost wages and accrued vacation time that she lost in October 2021. *Id.* ¶ 59. The arbitrator issued their decision in November 2022, finding that Plaintiff's 2015 workers' compensation claim was inactive, and that Plaintiff should have been granted leave from the USLB when she applied. *Id.* ¶ 61. Plaintiff alleges that she was awarded a partial payment but has never received the remainder of her lost wages or vacation pay and still owes the Board over

$4,000. *Id.* ¶ 62. She further alleges that in January 2023, the Board withheld her full and final workers' compensation settlement check from the 2015 workers' compensation claim for six months and refused to release the money unless she signed a letter stating that she was ineligible for employment with the Board again. *Id. See also* ECF No. 1-12 (Pl. Ex. 9). Plaintiff alleges that the money was released only after she notified the Board that she intended to inform the Court of the Board's refusal to pay the settlement. ECF No. 1, ¶ 64.

**B. Procedural Background**

On January 23, 2019, Plaintiff, acting pro se, filed suit in this Court against the Board and Ms. Peterson, moving for a temporary restraining order ("TRO") and seeking immediate injunctive relief to prevent the Board from terminating her. Case Civ. No. PX-19-00215, at ECF Nos. 1, 3. Plaintiff amended her complaint, *id.* at ECF No. 10, and made a renewed motion for TRO, *id.* at ECF Nos. 11, 15. The Board moved to dismiss Plaintiff's complaint. *Id.* at ECF No. 21. On June 6, 2019, the Court denied the TRO and granted Plaintiff's oral motion to dismiss Ms. Peterson from the suit. *Id.* at ECF No. 38. The Court allowed Plaintiff to amend her complaint solely to allege Rehabilitation Act violations that occurred during the applicable limitations period— January 2017 through January 2019. *Id.* at ECF No. 40. In April 2021, the Board filed a motion for summary judgment. *Id.* at ECF No. 68. Ms. Peterson submitted an affidavit in support of the Board's motion. *Id.* at ECF No. 68-4; ECF No. 1-7 (Pl. Ex. 4). The Court granted in part and denied in part the motion. Case Civ. No. PX-19-00215, at ECF No. 84. The parties settled in July 2022. *Id.* at ECF No. 95.

Plaintiff, acting pro se, filed the Complaint in the instant matter in June 2024. ECF No. 1. Plaintiff alleges that she was retaliated against and coerced in violation of the ADA, faced a hostile work environment and failure to accommodate, was discriminated against, was constructively

discharged, had her Fifth and Fourteenth Amendment rights violated, and had her FMLA rights interfered with during her time of employment with the Board when they denied her accommodations requests, repeatedly placed her in the Options process, and threatened to terminate her. *See generally id.* Plaintiff seeks damages and requests other relief such as copies of her confidential files, purging of derogatory records, a positive work reference, a change to Plaintiff's final evaluation, and for the Board to issue a public apology to Plaintiff. *Id.* at 17–18.

The Board filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 9. Plaintiff filed a response in opposition, ECF No. 15, and a revised response, ECF No. 16, and the Board filed a reply, ECF No. 17. Plaintiff filed a motion for leave to file a surreply. ECF No. 19.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory

supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Further, "pro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the

complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56[,]" but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The U.S. Court of Appeals for the Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

Converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir.1985)). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); see also *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Yet failure to file such an affidavit is "not necessarily fatal where the 'nonmoving party has adequately informed the court that . . . more discovery is necessary.'" *Sol v.*

*M&T Bank*, 713 F. Supp. 3d 89, 100 (D. Md. 2024) (quoting *Harrods*, 302 F.3d at 244–45); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (courts have "complete discretion" to deny conversion even where no Rule 56(d) affidavit has been filed). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. 5 Wright & Miller, Fed. Prac. & Proc. § 1366 (3d ed. 2004).

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th

9

192, 200 (4th Cir. 2024) (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

## III.    DISCUSSION

Here, the parties have both submitted numerous exhibits in support of their positions and Plaintiff does not request the opportunity to carry out further discovery. Therefore, where appropriate, this Court will construe Defendant's motion as one for summary judgment. When determining whether to grant summary judgment, additional facts will be discussed as necessary.

### A.  Fifth and Fourteenth Amendment Claims

Plaintiff alleges that her salary, vacation pay, and benefits are property rights that the Board deprived from her without procedural or substantive due process in violation of the Fifth and Fourteenth Amendments. ECF No. 1, ¶¶ 95–100, 104. Plaintiff further alleges that the Board violated her procedural and substantive due process rights when they recommended her for termination, and began termination procedures, without informing her of the legal grounds for that termination. *Id.* ¶¶ 101, 103. The Board argues that Count VI must be dismissed because the Board is a state agency and not a "person" subject to suit under 42 U.S.C. § 1983. ECF No. 9-1 at 27–28.

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Thus, to sustain an action under § 1983, a plaintiff must demonstrate that: (1) she suffered a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States; and (2) the

act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 45 n.3 (1988).

Plaintiff's claim for violations of the Fifth and Fourteenth Amendments is subject to dismissal because the Board is not a person and therefore, cannot be liable under § 1983. *See, e.g., James v. Frederick Cnty. Pub. Sch.,* 441 F. Supp. 2d 755, 760 (D. Md. 2006); *Robinson v. Bd. of Educ. of Washington Cnty.*, Civ. No. ELH-22-01102, 2023 WL 2499854, at \*12–13 (D. Md. Mar. 14, 2023); *Agbara v. Prince George's Cnty. Pub. Sch.*, Civ. No. TJS-20-0306, 2020 WL 7425298, at \*6 (D. Md. Dec. 18, 2020), *aff'd*, No. 21-1029, 2022 WL 683362 (4th Cir. Mar. 8, 2022); *Moore v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. RDB-16-3439, 2017 WL 3172820, at \*6 (D. Md. July 25, 2017). Therefore, Plaintiff's constitutional claims, Count VI, must be dismissed with prejudice.

### B. FMLA Interference

Plaintiff alleges that the Board unlawfully denied her FMLA leave on September 16, 2021, because she had worked for 12 months prior to starting her leave. ECF No. 1, ¶¶ 111–17. The Board argues that this claim is untimely and must be dismissed. ECF No. 9-1 at 29–30.

The FMLA entitles eligible employees to take "12 work weeks of leave" during a 12-month period for a qualifying "serious health condition that makes the employee unable to perform the functions of" his job. *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 795 (4th Cir. 2023). "These rights are 'prescriptive,' and claims for violations of them are known as 'interference' or 'entitlement' claims, arising under 29 U.S.C. § 2615(a)(1)[.]" *Adkins*, 70 F.4th at 795. Section 2615(a)(1) provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any right provided under" the FMLA. *Id.* at 796 (quoting 29 U.S.C. § 2615(a)(1)).

An FMLA claim must be brought within two years of the last event constituting an alleged violation. 29 U.S.C. § 2617(c)(1). Here, Plaintiff was informed that she was ineligible for FMLA leave on September 16, 2021. ECF No. 1, ¶ 116; ECF No. 1-9 (Pl. Ex. 6). Plaintiff did not file her Complaint until June 14, 2024, ECF No. 1, and her FMLA interference claim in Count VIII is therefore untimely and must be dismissed with prejudice.[3]

### C. ADA Claims

#### 1. The ADA Generally

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006). The public entity is required to make "'reasonable modifications' to its 'policies, practices, or procedures' when necessary to avoid such discrimination." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159–60 (2017) (quoting 28 C.F.R. § 35.130(b)(7) (2016)); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 488 (4th Cir. 2005) ("Title II . . . imposes an affirmative obligation to make 'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services' to enable disabled persons to receive services or participate in programs or activities.") (quoting 42 U.S.C. § 12131(2)). "Reasonable modifications" or "reasonable accommodations" are those "that are 'necessary' to provide a disabled individual with 'full and equal enjoyment' of the

---

[3] Under 29 U.S.C. § 2617(c)(2), the statute of limitations is extended to three years for a willful violation of the FMLA. Plaintiff does not allege a willful violation.

facility's services." *Canter v. Maryland*, Civ. No. ELH-22-2267, 2023 WL 5804285, at \*19 (D. Md. Sept. 6, 2023) (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)). An accommodation is not reasonable when it "either imposes undue financial and administrative burdens . . . or requires a fundamental alteration in the nature of the program." *Halpern*, 669 F.3d at 464 (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987)).

### 2. ADA Retaliation under 42 U.S.C. § 12203 and 29 C.F.R. § 1630.12

In Counts I and III,[4] Plaintiff contends that the Board retaliated against her when it, among other things, barred her from the USLB, continually put her in the Options program, deprived her of pay, revoked her benefits, seized her vacation pay, and terminated her.[5] ECF No. 1, ¶¶ 61, 64–65, 74. To establish a prima facie case of retaliation under the ADA, a plaintiff must show that "(1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action." *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 n.4 (4th Cir. 2020) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)). A request for accommodation is a protected activity under the ADA. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015). Once the plaintiff establishes a prima facie case of retaliation, "[t]he 'employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 174 (4th Cir. 2023) (quoting *Jacobs*, 780 F.3d at 578). "The burden then shifts back to [the plaintiff] to show that the proffered

---

[4] Plaintiff alleges retaliation in two counts. Count I is brought under 42 U.S.C. § 12203, and Count III is brought under the ADA's implementing regulations in 29 C.F.R. § 1630.12. ECF No. 1, ¶¶ 60–65, 73–77. Despite being brought in two separate causes of action, the analysis is the same.

[5] As discussed *infra*, there is no genuine dispute of material fact that the Board did not terminate Plaintiff, but rather Plaintiff retired.

reason is pretext." *Id.* (quoting *Jacobs*, 780 F.3d at 578). "Importantly, [the plaintiff] 'always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation.'" *Id.* (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)). The plaintiff must show that the protected conduct was the "but-for" cause of the adverse action. *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014).

At the summary judgment stage, if an employer proffers evidence of legitimate reasons for taking the adverse actions, courts may assume, without deciding, that the Plaintiff has established a prima facie case. *Bagwell v. Downtown Partnership of Baltimore, Inc.*, Civ. No. ELH-18-1786, 2020 WL 247293, at *7 n.2 (D. Md. Jan. 15, 2020) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), among other cases).

Here, the Board provides sufficient evidence to show that there were legitimate, nonretaliatory reasons for its actions.[6] Plaintiff was placed in the Options process, not because of her protected activity, but because when she applied for disability retirement, she certified that she was no longer able to perform her job. "Employees are placed in the options process when they are no longer able to perform the essential functions of their position." ECF No. 9-22 (Def. Ex. 20). Plaintiff's pay and vacation time were adjusted following the discovery that Plaintiff had been overpaid by over 500 hours. ECF No. 9-20 (Def. Ex. 18). Plaintiff was recommended for termination because she had applied for disability retirement and was no longer able to perform the essential functions of her position and had failed to select another option during the Options process. ECF No. 9-22. After being recommended for termination, Plaintiff's benefits were set to expire. *Id.* Plaintiff presents no evidence that shows that the Board's stated explanations for its

---

[6] Further, in her opposition brief, Plaintiff alleges that she suffered an adverse employment action because she was constructively discharged. However, as discussed *infra*, the Court finds the record insufficient to support any claim of constructive discharge.

actions are pretextual and therefore, the Board is entitled to summary judgment on Counts I and III.

### 3. Hostile Work Environment

In Count II of the Complaint, Plaintiff asserts a claim for hostile work environment under the ADA.[7] Plaintiff alleges that she was harassed based on her disability when she was placed in the Options program multiple times, recommended for termination, lost pay and vacation time, and was prevented from accessing the USLB. The Board argues that Plaintiff does not allege any facts showing discriminatory conduct that affected Plaintiff's work environment. ECF No. 9-1 at 19–20.

"To prove she suffered from a hostile work environment on the basis of her disability, Plaintiff must show that the alleged harassment: (1) was unwelcome; (2) was based on her disability; (3) was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) was imputable to her employer." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550–51 (D. Md. 2015) (citing *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009)). The first element is subjective. *Pueschel*, 577 F.3d at 565 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish the second element, a plaintiff must show that "but for the employee's [disability], he or she would not have been the victim of the discrimination." *Id.* (internal quotations omitted). For the third element, "harassment is considered sufficiently severe or pervasive to alter the terms or conditions of the employment if a workplace is 'permeated with discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Harris*, 510 U.S. at 21). This showing must be such that a reasonable person in the plaintiff's position would find the workplace

---

[7] Plaintiff mentions race discrimination in her opposition brief, ECF No. 17 at 12, but does not plead race discrimination in her Complaint. Therefore, to the extent Plaintiff intends to assert a race discrimination claim, the Court declines to address it.

environment objectively hostile or abusive. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

Here, the Court finds no genuine dispute that any unwelcome treatment Plaintiff received was not "sufficiently severe or pervasive" to support her hostile work environment claim. There is no evidence that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Pueschel*, 577 F.3d at 565 (quoting *Harris*, 510 U.S. at 21). Plaintiff was placed in the Options program because she certified that she could no longer perform her duties as an assistant principal when she applied for disability leave. She was recommended for termination because she had failed to choose an option that would allow her to remain employed. And she lost pay and vacation time because she had improperly received extra leave that resulted in overpayment. ECF No. 9-20 (Def. Ex. 18). The alleged harassment "amount[ed] to nothing more than a series of ordinary personnel decisions." *Hemphill v. ARAMARK Corp.*, Civ. No. ELH-12-01584, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014). A reasonable person in the Plaintiff's position could not find the workplace environment objectively hostile or abusive.

Accordingly, summary judgment shall be entered in favor of the Board on Count II.

### 4. Constructive Discharge

In Count V of the Complaint, Plaintiff asserts a claim for constructive discharge.

The doctrine of constructive discharge exists to shield employees "from a calculated effort to pressure [them] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by [their] co-workers." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986). To establish constructive discharge under the ADA, a plaintiff must show that (1) "[s]he was a qualified individual with a disability; (2) [s]he

was discharged; (3) [s]he was fulfilling h[er] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 169 (4th Cir. 2024) (quoting *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012)).

Constructive discharge occurs when an employee "resigns after h[er] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Id.* at n.7 (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). Perceived unfair criticism and frustrating working conditions are not so intolerable as to establish constructive discharge. *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). Constructive discharge requires that a reasonable person in the plaintiff's position "would have had no choice but to resign" as a result of "intolerable" work conditions. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (citations omitted). The standard is an objective one, viewed from the plaintiff's standpoint. *Id.* Whether an employer acted deliberately or with "a subjective intent to force a resignation[ ]" is not sufficient to establish a constructive discharge. *E.E.O.C. v. Consol. Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (citing *Green*, 578 U.S. 547). However, "an environment in which an employer makes clear to an employee her termination was imminent and that 'the axe [is] about to fall' may be objectively intolerable." *Decoster v. Becerra*, Civ. No. TDC-21-2195, 2022 WL 3083343, at *4 (D. Md. Aug. 3, 2022) (quoting *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)).

Here, the Court finds no genuine dispute that Plaintiff retired on February 2, 2022, ECF No. 9-8 (Def. Ex. 7), because she was approved for disability retirement through the Maryland State Retirement and Pension System. There is no evidence that she sought to resign due to any objectively "intolerable" work conditions. *Perkins*, 936 F.3d at 212. Although Plaintiff was

recommended for termination on November 16, 2021, ECF No. 9-21 (Def. Ex. 19), Plaintiff's retirement was approved and effectuated before any action was taken on the recommendation that she be terminated. The conditions under which this recommendation to terminate was made could not have been "objectively intolerable" because Plaintiff had requested to go on leave for a year and had not worked in about a year.

Moreover, Plaintiff was given multiple options that could have avoided retirement. The Board scheduled an Options conference with Plaintiff after receiving notification that she had applied for disability retirement, during which Plaintiff certified that she was unable to perform the normal duties of her job. ECF Nos. 9-21 (Def. Ex. 19), 9-22 (Def. Ex. 20). At the Options conference on August 18, 2021, Plaintiff was informed that she would have to select an option by September 16, 2021. ECF No. 9-19 (Def. Ex. 17). The options were as follows: (1) apply, and be approved, for FMLA; (2) apply, and be approved, for an unpaid Board-approved leave of absence; (3) apply, and make the candidate list, for another position within the Board; (4) apply, and be approved, for a reasonable accommodation or alternate position; (5) apply for disability retirement; or (6) voluntary resignation. *Id.* At the August 18 conference, Plaintiff indicated that she was ineligible for FMLA leave and that she was appealing her denial from disability retirement. *Id.* This left Plaintiff with three options other than resignation. Plaintiff began pursuing a Board-approved leave of absence but stopped. She then was denied a leave request as a reasonable accommodation under the ADA. *Id.* Plaintiff's ADA leave request was denied because she requested a year of leave as a reasonable accommodation, and the Board Division of Human Resources could not approve a leave of absence for more than 90 days. ECF No. 9-18 (Def. Ex. 16).

Accordingly, summary judgment shall be entered in favor of the Board on Count V.

### 5.  ADA Discrimination

In Count IV of the Complaint, Plaintiff asserts a claim for disability discrimination under Title II of the ADA. She alleges that the Board discriminated against her when she was placed in the Options process with no options but termination or resignation, when she was told that she was ineligible for FMLA leave, when she was denied leave as reasonable accommodation, and when she was terminated while on sick leave. ECF No. 1, ¶¶ 79–83.

To prevail on a claim of disability discrimination, a plaintiff must show that she: (1) has a disability or is regarded as having a disability; (2) is qualified to participate in or to receive the benefits of a public service, program, or activity; and (3) was denied such participation or benefits, "or otherwise discriminated against," based on her disability. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016); *see also Cartagena v. Lovell*, 103 F.4th 171, 184 (4th Cir. 2024); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020). To establish a disability, a plaintiff must show "(1) that [s]he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006) (citing 42 U.S.C. § 12102(2)(A)). Under the ADA, only individuals who are "qualified" for the position at issue may state a claim for discrimination. *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 212 (4th Cir. 1994).

A "qualified individual with a disability" is defined by the ADA as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Fourth Circuit has stated that to determine whether an individual is qualified, a court must decide (1) whether the individual could perform the essential functions of the job, which are "functions that bear more than a marginal relationship to the job at issue," and (2) if not, whether a reasonable accommodation

would enable them to perform those functions. *Tyndall*, 31 F.3d at 213 (citation omitted). "In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Id.* "Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of h[er] job functions, essential or otherwise." *Id.* (internal citation and quotation omitted). The Fourth Circuit has recognized that a "regular and reliable level of attendance" is necessary for most jobs. *Id.* (collecting cases). Thus, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Id. See also McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 22-1697, 2023 WL 4637115, at *4 (4th Cir. July 20, 2023) (affirming dismissal where plaintiff did not regularly go into work at the time of termination and therefore was not a qualified individual under the ADA). The burden rests with the plaintiff to demonstrate that she could perform the essential functions of her job with reasonable accommodations. *Tyndall*, 31 F.3d at 213.

While there is no dispute that Plaintiff is disabled, Plaintiff cannot meet her burden of establishing that she is qualified to perform the essential functions of her position as assistant principal with reasonable accommodation. While it is true that Plaintiff performed her job adequately prior to her injury in 2015, she does not contend that she could perform the essential functions of an assistant principal at the time of the alleged discrimination. In fact, by applying for disability with the Maryland State Retirement and Pension System, Plaintiff was required to submit a certification that she is "mentally or physically incapacitated for further performance of the normal duties of [her] job, and that incapacity is likely to be permanent." ECF No. 9-22 (Def. Ex. 20). At the time that the Board recommended Plaintiff for termination, she had failed to report to

work in any capacity for almost a full year even after exhausting all available leave and declining options to return to work in any capacity. "[A]n employee who does not come to work cannot perform any of h[er] job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213. Because Plaintiff offers no evidence that she was capable of meeting the attendance requirements as set by the Board, she is not a qualified individual under the ADA. Thus, the Board is entitled to summary judgment on Count IV, Plaintiff's ADA discrimination claim.

### 6.  Failure to Accommodate

In Count VII of the Complaint, Plaintiff asserts a claim for failure to accommodate under the ADA. "A successful failure to accommodate claim requires Plaintiff to show that: (1) she is an individual with a disability [under the meaning of the statute]; (2) her employer had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of her position; and (4) her employer refused to make the accommodation." *Fierce*, 101 F. Supp. 3d at 549 (citing *Wilson v. Dollar General Corp.*, 717 F.3d 337, 344 (4th Cir. 2013)). Further, Plaintiff "bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin v. Univ. of Maryland Med. Sys. Corp.*, 369 Fed. Appx. 472, 481 (4th Cir. 2010) (citing *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997)). As with an ADA discrimination claim, the plaintiff "bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Tyndall*, 31 F.3d at 213.

As explained in Part III.C.5, Plaintiff cannot establish that she was a qualified individual with a disability under the ADA. For this reason, summary judgment must be granted on Count VII.

Even if Plaintiff could prove that she is a qualified individual, she cannot show that her requested accommodation, a year of leave, was reasonable. "[A] leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Wilson*, 717 F.3d at 345 n.7 (citing *Halpern*, 669 F.3d at 465–66; *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). In its investigation, the Maryland Commission on Civil Rights "could not verify that there was an accommodation that would allow [Plaintiff] to perform the essential functions of the job." ECF No. 9-6 (Def. Ex. 5). At the time of her leave request, Plaintiff had already been on leave for around a year and she did not provide any evidence that a another year of leave would be "likely to achieve a level of success" that would allow her to "perform the essential functions" of the job of assistant principal. *See Wilson*, 717 F.3d at 345 n.7. The Board is entitled to summary judgment as to Count VII for this additional reason.

IV.    **CONCLUSION**

For the foregoing reasons, the Board's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as one for summary judgment, is GRANTED and Plaintiff's Motion for Leave to File Surreply is DENIED. The Complaint is dismissed with prejudice, and the Clerk shall close this case.

A separate Order has issued.

___4/3/25___
Date

_____
Matthew J. Maddox
United States District Judge